IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JAMES BONINI
CLERK

10 APR -9 PM 3: 48

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 2:10-cr-88 |
| : | 18 U.S.C. § 371 |
| MARIA TERECHINA : | 18 U.S.C. § 1594(d) |
| a.k.a. "Maria Terechina Ulaj" : | 28 U.S.C. § 2461 |

Judge Graham

**INFORMATION**

The United States Attorney Charges:

## COUNT 1

### INTRODUCTION

At all times material to this Information:

A. ARRA, Inc., formed and incorporated in the State of Ohio, on or about March 20, 1998, with its principal office located in Sharonville, Hamilton County, Ohio, in the Southern District of Ohio, was controlled by Alexander Litt, Roman Litt, and Andrew Litt.

B. B & M Best Consulting Company (a.k.a. "B & M Best Service") (hereinafter "B & M"), formed and incorporated in the State of Ohio, on or about December 4, 2000, with its principal office located in Dublin, Franklin County, Ohio, in the Southern District of Ohio, provided housekeeping and other services to hotels in Ohio. Defendant MARIA TERECHINA participated in the supervision and management of B & M's business operations.

C. Sweep Smart Corp. (hereinafter "Sweep Smart"), formed and incorporated in the State of Ohio, on or about December 26, 2006, with offices located in Loveland, Ohio, and

Dublin, Ohio, in the Southern District of Ohio, provided housekeeping and other services to hotels in Ohio. Defendant MARIA TERECHINA participated in the supervision and management of Sweep Smart's business operations.

D. L.K., an Estonian woman born in 1948, worked at B & M at various times between September 2000 and May 2002 for Defendant MARIA TERECHINA and her co-conspirators.

F. N.Y.B., a Belarusian woman born in 1977, worked at B & M in April 2002 for Defendant MARIA TERECHINA and her co-conspirators.

G. L.R.T., a Ukrainian woman born in 1984, worked at B & M in July and August 2005 for Defendant MARIA TERECHINA and her co-conspirators.

H. A.A., A.B., P.B., Z.B., L.D., E.E.1, E.E.2, G.G., A.K., E.K., I.K., M.K., O.K., S.K., H.M., L.M., T.M., N.N., O.O., I.P., S.P., V.P., T.R., D.S., I.S.1, I.S.2, L.S., N.S., S.S.1, S.S.2, L.Y., T.Y., and U.Z. worked at B & M and Sweep Smart at various times between April 2005 and December 2007 for Defendant MARIA TERECHINA and her co-conspirators.

## THE CONSPIRACY AND ITS OBJECTS

I. From in or about May 1999, and continuing thereafter until on or about December 14, 2007, in the Southern District of Ohio, Defendant MARIA TERECHINA did unlawfully, willfully, and knowingly conspire and agree with other persons, both known and unknown to the United States Attorney but not charged in this Information (1) to defraud the United States by impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment,

computation, assessment, and collection of the revenue: to wit, Federal income taxes, Social Security and Medicare taxes (FICA), and Federal unemployment taxes; and (2) to commit offenses against the United States, to wit,

(1) to knowingly possess the actual and purported passports and immigration documents of individuals to prevent and restrict, without lawful authority, those individuals' liberty to move and travel, in order to maintain the labor and services of those individuals when those individuals were victims of a severe form of trafficking in persons as defined in section 103 of the Trafficking Victims Protection Act of 2000, as prohibited by Title 18, United States Code, Section 1592;

(2) to transport and move individuals within the United States by means of transportation and otherwise, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that those individuals had come to, entered, and were remaining in the United States illegally, and in furtherance of such violation of law, as prohibited by Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (a)(1)(B)(I); and

(3) to conceal, harbor, and shield individuals from detection by immigration and other law enforcement authorities, in a place, including a building and a means of transportation, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that those individuals had come to, entered, and were remaining in the United States illegally, as prohibited by Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(I).

J. It was the object of the conspiracy:

(1) to obtain money and funds by recruiting, employing, housing and transporting illegal aliens from Eastern Europe and other areas, and employing said aliens at hotel properties in Ohio; and

(2) to retain money and funds through tax evasion accomplished by the under reporting of the number of individuals employed and the amount of wages paid to employees.

## MANNER AND MEANS OF THE CONSPIRACY

K. The manner and means by which Defendant MARIA TERECHINA and her co-conspirators ("the conspirators") sought to accomplish the objects of the conspiracy included, among other things, the following:

(1) The conspirators operated businesses including B & M and Sweep Smart;

(2) The conspirators employed aliens from Eastern Europe and other areas who were not authorized to work in the United States;

(3) The conspirators used employment agencies in New York and abroad and advertisements in foreign-language newspapers to recruit laborers from Eastern Europe and other areas to travel to the United States to work for them;

(4) The conspirators promised the recruits employment, including domestic servitude, to entice laborers to come to the United States;

(5) When recruits arrived, the conspirators would tell them that they had to work as hotel housekeepers;

4

(6) The conspirators would arrange and provide for the transportation of the laborers to Ohio where the laborers would work in hotels;

(7) The conspirators would take possession of and hold the laborers' passports, the contents of the passports, including the visas issued by the United States Department of State, and other immigration documents;

(8) The conspirators would require the laborers to use their wages from B & M, Sweep Smart, and other businesses to pay their purported debts to the conspirators;

(9) The conspirators would keep the first paycheck of each worker as a "deposit";

(10) The conspirators would fail to pay the laborers on time;

(11) The conspirators would control the movement of the laborers by transporting them to and from the hotel work sites;

(12) The conspirators would falsify immigration documents and assist the laborers in obtaining such false and fraudulent documents;

(13) The conspirators would file false Forms 941 Employer's Quarterly Federal Tax Returns understating the number of individuals employed by B & M and understating the total wages paid to employees, thus fraudulently reducing the total amount of payroll taxes due from B & M;

(14) The conspirators used only the first name of each worker on schedules, payrolls and payroll invoices;

5

(15)   The conspirators provided false Forms I-9 Employment Eligibility Verifications to hotels in an attempt to portray the laborers as authorized to work in the United States; and

(16)   The conspirators periodically changed the names of the businesses in an effort to elude law enforcement scrutiny.

## OVERT ACTS

L.   In furtherance of the conspiracy and to effect the objects of the conspiracy, the conspirators committed and caused to be committed the following overt acts, among others, in the Southern District of Ohio and elsewhere:

### Initial Arrangements

(1)   Beginning in or about May 1999, and continuing at through on or about August 31, 2004, the conspirators, on behalf of their businesses, rented apartments at the Sawmill Village apartment complex in Dublin, Ohio;

(2)   On or about April 26, 2001, the conspirators signed a contract with the Westin Great Southern Hotel (hereinafter "the Westin") in Columbus, Ohio, in which ARRA agreed to provide housekeeping services to the Westin;

(3)   Beginning in or about July 2001, and continuing through on or about September 30, 2007, the conspirators, on behalf of their businesses, rented apartments at the Arbors of Dublin apartment complex in Dublin, Ohio;

Labor of L.K.

(4) In or about August 2000, Defendant MARIA TERECHINA's co-conspirators offered L.K. a position as a domestic servant in the United States;

(5) In or about September 2000, one of Defendant MARIA TERECHINA's co-conspirators drove L.K. from an airport to an office in the New York City area;

(6) In or about September 2000, Defendant MARIA TERECHINA's co-conspirators told L.K. that she owed a $1000 debt for the co-conspirator's efforts in finding L.K. a job in the United States;

(7) In or about September 2000, Defendant MARIA TERECHINA's co-conspirators arranged for and provided transportation for L.K. to Ohio;

(8) In or about September 2000, the conspirators asked to take possession of L.K.'s passport and related documents;

(9) In or about September 2000, after L.K. refused to give up her passport and related documents, the conspirators made photocopies of L.K.'s passport and related documents;

(10) In or about September 2000, Defendant MARIA TERECHINA's co-conspirators told L.K. that the position as a domestic servant that had been promised to L.K. was no longer available and that she would have to work as a housekeeper in a hotel;

(11) On various dates between in or about September 2000 and in or about May 2002, the conspirators drove L.K. to and from various hotel work sites;

7

(12)   In or about September 2000, the conspirators sent L.K.'s first paycheck to an Estonian employment agency to repay the $1000 debt;

(13)   On October 16, 2001, the conspirators submitted invoice #1268 to the Holiday Inn Express for $4219.01 for labor performed by L.K. and other laborers;

(14)   On October 22, 2001, the conspirators submitted invoice #1282 to the Holiday Inn Express for $5153.68 for labor performed by L.K. and other laborers;

(15)   On or about October 23, 2001, the conspirators received and accepted check #16827 for $5153.68 from the Holiday Inn Express as payment on invoice #1282 for labor performed by L.K. and other laborers;

(16)   On or about October 24, 2001, the conspirators received and accepted check #16833 for $4219.01 from the Holiday Inn Express as payment on invoice #1268 for labor performed by L.K. and other laborers;

(17)   On January 6, 2002, the conspirators submitted invoice #1400 to the Holiday Inn Express for $1929.18 for labor performed by L.K. and other laborers;

(18)   On or about January 7, 2002, the conspirators received and accepted check #17478 for $1929.18 from the Holiday Inn Express as payment on invoice #1400 for labor performed by L.K. and other laborers;

(19)   On January 7, 2002, the conspirators submitted an invoice to the Holiday Inn Express for $3543.92 for labor performed by L.K. and other laborers;

(20)     On or about January 8, 2002, the conspirators received and accepted check #17484 for $3543.92 from the Holiday Inn Express as payment on the January 7, 2002 invoice for labor performed by L.K. and other laborers;

(21)     In or about May 2002, the conspirators evicted L.K. from her apartment when L.K. refused to work;

Labor of N.Y.B.

(23)     Between on or about July 18, 2001 and March 27, 2002, Defendant MARIA TERECHINA's co-conspirators told N.Y.B. that she would have to go to the United States to work to pay off her ex-husband's gambling debts;

(24)     On or about March 27, 2002, Defendant MARIA TERECHINA's co-conspirators obtained a "Letter of Invitation" falsely indicating that N.Y.B. would be traveling to the United States to attend a business convention in New Orleans, Louisiana on April 19-21, 2002;

(25)     On or about April 11, 2002, Defendant MARIA TERECHINA's co-conspirators assisted N.Y.B. in obtaining a B-1 Visitor Visa;

(26)     On or about April 18, 2002, Defendant MARIA TERECHINA's co-conspirators transported N.Y.B. to an airport in Warsaw, Poland, in order for her to travel to the United States;

(27)     On or about April 18, 2002, one of Defendant MARIA TERECHINA's co-conspirators drove N.Y.B. from the airport in Columbus, Ohio, to an apartment in the Columbus area;

(28) On or about April 18, 2002, Defendant MARIA TERECHINA took possession of N.Y.B.'s passport and travel documents;

(29) On or about April 18, 2002, the conspirators told N.Y.B. that she would have to clean hotel rooms to earn money to pay off the debt owed by her ex-husband;

(30) On or about April 18, 2002, the conspirators told N.Y.B. the rules and conditions for working at the hotels;

(31) On or about April 18, 2002, Defendant MARIA TERECHINA and her co-conspirators transported N.Y.B. to an apartment where she would be housed with other laborers;

(32) Each day, from April 19, 2002 through April 25, 2002, the conspirators transported N.Y.B. to work at hotels in Columbus, Ohio;

Labor of L.R.T.

(35) On or about May 18, 2005, Defendant MARIA TERECHINA's co-conspirators offered L.R.T. a position as a domestic servant in the United States;

(36) On or about May 19, 2005, Defendant MARIA TERECHINA's co-conspirators fraudulently obtained a visa to allow L.R.T. to enter the United States;

(37) On or about July 26, 2005, one of Defendant's MARIA TERECHINA's co-conspirators drove L.R.T. from an airport to an apartment in the New York City area;

(38) On or about July 26, 2005, one of Defendant MARIA TERECHINA's co-conspirators broke into L.R.T.'s luggage and took away L.R.T.'s passport and related documents;

(39) On or about July 26, 2005, one of Defendant MARIA TERECHINA's co-conspirators told L.R.T. that she owed a $1,000 debt for the co-conspirator's efforts in finding L.R.T. a job in the United States;

(40) On or about July 26, 2005, one of Defendant MARIA TERECHINA's co-conspirators told L.R.T. that she had to sign a contract promising to repay the $1,000 debt;

(41) On or about July 26, 2005, one of Defendant MARIA TERECHINA's co-conspirators told L.R.T. that the position as a domestic servant that had been promised to L.R.T. was no longer available and that she would have to take other work, such as a housekeeper in a hotel;

(42) On or about July 30, 2005, one of Defendant MARIA TERECHINA's co-conspirators drove L.R.T. to a home near New York City to meet Defendant MARIA TERECHINA and other conspirators;

(43) On or about July 30, 2005, Defendant MARIA TERECHINA received L.R.T.'s passport and related documents from a co-conspirator, and retained the passport and related documents until August 9, 2005;

(44) On or about July 30, 2005, the conspirators drove L.R.T. to Ohio;

(45) On or about July 30, 2005, the conspirators told L.R.T. the rules and conditions for working at Columbus, Ohio, area hotels;

(46) On or about July 30, 2005, the conspirators told L.R.T. that she would be housed in an apartment at the Arbors of Dublin apartment complex with other laborers;

11

(47) Each day, from on or about July 30, 2005 until on or about August 8, 2005, the conspirators drove L.R.T. to and from the Westin hotel;

(48) On or about July 31, 2005, the conspirators increased the amount of rent L.R.T. had to pay;

(49) On or about August 8, 2005, Defendant MARIA TELECHINA submitted invoice #3314 to the Westin for $2,696.38 for labor performed by L.R.T. and other laborers;

(50) On or about August 18, 2005, the conspirators received and accepted check #26391 for $8,195.51 from the Westin as payment on invoices ## 3302, 3309, and 3314 for labor performed by L.R.T. and other laborers;

(51) On or about August 20, 2005, Defendant MARIA TELECHINA submitted invoice #3322 to the Westin for $3,570.50 for labor performed by L.R.T. and other laborers;

(52) On or about August 22, 2005, Defendant MARIA TELECHINA deposited check #26391 for $8,195.51 in checking account #0075150337 in Fifth/Third Bank;

(53) On or about August 23, 2005, the conspirators received and accepted check #26445 for $6,359.38 from the Westin as payment for invoices ## 3322, 3323, and 3302A for labor performed by L.R.T. and other laborers;

(54) On or about August 26, 2005, Defendant MARIA TELECHINA deposited check #26445 for $6,359.38 in checking account #0075150337 in Fifth/Third Bank;

(55) On or about October 23, 2005, Defendant MARIA TERECHINA did sign and cause to be filed a Form 941 Employer's Quarterly Federal Tax Return for the third quarter of 2005, which was filed with the Director, Internal Revenue Service, at Atlanta, Georgia, stating

that B & M claimed five employees whom B & M paid a total of $29,200.00, whereas, as Defendant MARIA TERECHINA then and there knew and believed, B & M had thirty-seven employees whom B & M paid a total of $169,504.70, twenty-eight of whom B & M never gave a Form W-2 or Form 1099, whose income was never reported to the IRS, and whose income and employment taxes were never paid, creating an estimated tax loss to the United States of $44,045.68;

(56) On or about February 7, 2006, Defendant MARIA TERECHINA did sign and cause to be filed a Form 941 Employer's Quarterly Federal Tax Return for the fourth quarter of 2005, which was filed with the Director, Internal Revenue Service, at Atlanta, Georgia, stating that B & M claimed five employees whom B&M paid a total of $3,369.86, whereas, as Defendant MARIA TERECHINA then and there knew and believed, B & M had thirty-four employees whom B&M paid a total of $136,234.01, twenty-seven of whom B&M never gave a Form W-2 or Form 1099, whose income was never reported to the IRS, and whose income and employment taxes were never paid, creating an estimated tax loss to the United States of $38,356.74;

(57) On or about March 3, 2007, Defendant MARIA TERECHINA did sign and cause to be filed a Form 941 Employer's Quarterly Federal Tax Return for the third quarter of 2006, which was filed with the Director, Internal Revenue Service, at Cincinnati, Ohio, stating that B & M claimed seven employees whom B&M paid a total of $28,674.76, whereas, as Defendant MARIA TERECHINA then and there knew and believed, B & M had thirty-four employees whom B&M paid a total of $178,040.35, nineteen of whom B & M never gave a

Form W-2 or Form 1099, whose income was never reported to the IRS, and whose income and employment taxes were never paid, creating an estimated tax loss to the United States of $40,934.94;

(58) On or about March 13, 2007, Defendant MARIA TERECHINA did sign and cause to be filed a Form 941 Employer's Quarterly Federal Tax Return for the second quarter of 2006, which was filed with the Director, Internal Revenue Service, at Cincinnati, Ohio, stating that B & M claimed zero employees whom B & M paid a total of $0.00, whereas, as Defendant MARIA TERECHINA then and there knew and believed, B & M had thirty-two employees whom B & M paid a total of $147,497.79, twenty-two of whom B & M never gave a Form W-2 or Form 1099, whose income was never reported to the IRS, and whose income and employment taxes were never paid, creating an estimated tax loss to the United States of $36,386.99;

(59) On or about March 15, 2007, Defendant MARIA TERECHINA did sign and cause to be filed a Form 941 Employer's Quarterly Federal Tax Return for the fourth quarter of 2006, which was filed with the Director, Internal Revenue Service, at Cincinnati, Ohio, stating that B & M claimed zero employees whom B & M paid a total of $0.00, whereas, as Defendant MARIA TERECHINA then and there knew and believed, B & M had eighteen employees whom B & M paid a total of $114,186.35, eleven of whom B & M never gave a Form W-2 or Form 1099, whose income was never reported to the IRS, and whose income and employment taxes were never paid, creating an estimated tax loss to the United States of $25,362.93;

(60) On or about December 26, 2006, the conspirators changed the name of the their business from B & M to Sweep Smart;

(61) On or about April 1, 2007, one of Defendant MARIA TERECHINA's co-conspirators signed a contract with the Holiday Inn on the Lane in Columbus, Ohio, in which Sweep Smart agreed to provide housekeeping services to the Holiday Inn on the Lane;

(62) On or about April 1, 2007, the conspirators provided falsified or incomplete Forms I-9 Employment Eligibility Verifications to the Holiday Inn on the Lane in an effort to falsely portray several aliens as authorized to work in the United States;

(63) Between on or about February 26, 2006, and September 30, 2007, the conspirators housed LS, LY, and UZ, whom Defendant MARIA TERECHINA knew to be remaining in the United States in violation of law; and

(64) Each day, between on or about February 26, 2006, and September 30, 2007, the conspirators transported LS, LY, and UZ, whom Defendant MARIA TERECHINA knew to be remaining in the United States in violation of law, to and from the Holiday Inn on the Lane and various hotel work sites.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE A**

As the result of committing the offense of conspiracy to knowingly possess the actual and purported passports and immigration documents of individuals and to prevent and restrict, without lawful authority, those individuals' liberty to move and travel, in order to maintain the labor and services of those individuals when those individuals were victims of a severe form of trafficking in persons as defined in section 103 of the Trafficking Victims Protection Act of 2000, as prohibited by Title 18, United States Code, Section 1592, Defendant MARIA TERECHINA shall forfeit to the United States pursuant to 18 U.S.C. § 1594(d) [formerly 18 U.S.C. § 1594(b)] and 28 U.S.C. § 2461, Defendant MARIA TERECHINA's interest in all property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violation, and all property, real and personal, constituting or derived from any proceeds that Defendant obtained, directly or indirectly, as a result of such violation.

Consistent with Title 18, United States Code, Section 1594(d) and Title 28, United States Code, Section 2461.

CARTER M. STEWART
United States Attorney

*/s/ Gary L. Spartis*

GARY L. SPARTIS
Columbus Branch Chief